UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CV  08  1963

------------------------------------------------------------------------

PETER BRANSFIELD

                        Plaintiff,

            -against-

NASSAU COUNTY CORRECTIONS OFFICER
ARTHUR HAGENBRUCH, Individually, and as a
Corrections Officer attached to the Nassau County
Corrections Department, and other Corrections
Officers whose names are currently unknown,
Individually, and as Corrections Officers attached
to the Nassau County Corrections Department
and the COUNTY OF NASSAU

                        Defendants.

------------------------------------------------------------------------

COMPLAINT

(S.I)

FILED
IN CLERK'S OFFICE
U.S DISTRICT COURT E.D.N.Y.

★   MAY . 1 4 2008   ★

LONG ISLAND OFFICE

BIANCO, J.

TOMLINSON, M

Plaintiff, PETER BRANSFIELD, as and for his Complaint, by his attorneys, LAW

OFFICES OF STEPHEN CIVARDI, P.C., respectfully alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1.    Plaintiff, PETER BRANSFIELD, is an adult citizen who resides at

1780 Hiawathas Path, Southold, New York 11971.

2.    This Court has jurisdiction of this action pursuant to 28 U.S.C. §1331, 1332

§1343, and 42 U.S.C. § 1983.

3.    Venue is properly laid, pursuant to 28 U.S.C. §1391, et seq. in the Eastern

District of New York where all parties reside and in which the events and violations

complained of occurred.

4.    Plaintiff demands a trial by jury of all the issues in this action.

5.    That at all times hereinafter mentioned, the defendant, Corrections Officer

1

Arthur Hagenbruch was at all times relevant to this Complaint duly appointed and acting as a Corrections Officer of the NASSAU COUNTY CORRECTIONAL FACILITY, acting under the color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of New York and/or Nassau County and is being sued herein in his official capacity and individually.

6.     That at all times relevant to this Complaint, defendant, Corrections Officer Arthur Hagenbruch was assigned to the NASSAU COUNTY CORRECTIONAL FACILITY.

7.     That at all times hereinafter mentioned defendant, COUNTY OF NASSAU is a County of the State of New York.

## FACTUAL BACKGROUND

8.     That on or about February 22, 2006 while an inmate at the Nassau County Correctional Facility, plaintiff was directed to work in the rear of a box truck for purposes of making deliveries throughout the various buildings at the facility.

9.     While a passenger in the rear of the aforesaid box truck, the plaintiff was afforded no safety devices, grab bars, seatbelts or in any other manner to secure himself while the truck was moving and operated by Corrections Officer Arthur Hagenbruch.

10.     That during the course of delivering materials within the area of the jail property, metal carts that contained various items became dislodged and propelled the plaintiff out the rear of the truck where he fell five feet to the pavement and received serious personal injuries as hereinafter alleged.

11.     That despite the serious and extensive injuries sustained by the plaintiff he was not provided with prompt or adequate medical care.

12.     That the plaintiff on the days following his injuries repeatedly asked for and

2

received untimely inadequate medical care.

13.     On February 22, 2006, Mr. Bransfield returned to the warehouse approximately 11:00 a.m. to 12:00 p.m. and was in pain and limping.  Had he been offered medical attention he would have readily accepted.  The next morning he had difficulty walking and was in pain but reported to work out of fear that he would lose his job and be returned to the general jail population.

14.     On February 23, 2006, Joseph Fuoco, an employee of the Nassau County Correctional Facility, saw that Mr. Bransfield was in pain and gave him light duty.  Upon returning to his housing area plaintiff was asked by an Officer Lewis why his right hand was bandaged.  He explained to him it was cut in an accident he had the prior morning.  Officer Lewis asked if an accident report had been filed and plaintiff told him he did not know. Nothing more was said and plaintiff returned to his bunk to rest. At this time pain was increasing in plaintiff's back, right foot and left elbow.  Plaintiff's knees were swollen but they were not yet painful.  He was experiencing dizziness and had difficulty getting any sleep.

15.     On February 24, 2006 plaintiff was called to work by Officer Hagenbruch in the morning but was unable to work because of the severity of the pain. Plaintiff asked a guard how to receive medical attention and was told to fill out a medical form, drop it in the box and wait to be called. He followed these instructions. Officer Hagenbruch returned to the dorm after bringing other inmates to the warehouse and had plaintiff called to the hallway. In the hallway he told plaintiff not to say he was thrown from the truck because he would get in trouble. Plaintiff  asked him what he should say and Officer Hagenbruch told plaintiff to say that he tripped somewhere in the building. Officer Hagenbruch was concerned because plaintiff did not have proper clearance to be where he was when the accident occurred and apparently had not been cleared to work in this job detail before the accident occurred. Plaintiff told Officer Hagenbruch that plaintiff was not a very good liar

3

and Officer Hagenbruch said nothing further.  Officer Hagenbruch returned later that day and told

plaintiff it was okay to tell the truth now and he left. By that time plaintiff had received the clearance

for working outside that was apparently required for him to work on the truck in the first instance.

16.      On February 25, 2006, Plaintiff could not go to work.  He asked a Correction

Officer about seeing the medical department and he was told he would be called that day.  He was

told he would be called to the PM medical but was not.  A female Corrections Officer asked him

why he was limping and he told her about the accident.

17.      On February 26, 2006, Mr. Bransfield asked Correction Officer on duty in the dorm

area when the Medical Call was that day and was told it could be anytime during the day. At about

5:00 p.m. He asked Officer Lewis if anything could be done to get to medical.  Officer Lewis asked

plaintiff if an accident report has been made and plaintiff said he did not know. Officer Lewis

proceeded to make a report and got plaintiff to medical. At medical they ordered an x-ray of

plaintiff's back and right foot and he was told not to worry about dizziness and blurred vision and

headaches because the symptoms might be related to lying down too much.

18.      Plaintiff had swelling in both knees but they were not yet painful and he was more

concerned  about the pain in his back, elbow and right hand.  He was given motrin and flexural.

On February 27, 2006 plaintiff again asked for medical attention and none was received. On

February 28, 2006 plaintiff asked a Correction Officer for a grievance form to expedite x-rays being

taken. Plaintiff was told not to hand in a grievance form because it was too much work for them to

do. Plaintiff was told x-rays would be taken approximately 7:30 p.m.  Plaintiff was called to the

Medical Department after pleading with a Correction Officer so that x-rays could be taken of his

back. When plaintiff asked about other x-rays he was told to fill out another medical form and ask

for a medical and accident report.

19.      On March 1, 2006, plaintiff returned to work on light duty. He submitted a medical

4

call form for pain in his back, right foot, left elbow, dizziness and blurred vision. Plaintiff received no answer to that request.

20.     Again, on March 2, 2006 plaintiff reported for light duty, submitted a call for medical attention and received no response.

21.     On March 3, 2006 plaintiff reported to light duty and he asked for a sick call/medical form and told that there were no more forms.

22.     On March 4, 2006 plaintiff sent a grievance form to obtain medical and accident reports. I signed a sick call slip for ongoing symptoms and pain and received no response.

23.     On March 5, 2006 plaintiff was in severe pain and had had no medication for two days. He was called down to the medical unit that day at approximately 3:00 p.m. and complained of ongoing symptoms and pain in his right foot, back, left elbow, swelling in his knees, dizziness and blurred vision. He was told to put hot compresses on my back and that nothing major was wrong. He was never given the compresses. He asked for a medical and accident report and was told he could not have one.

24.     On March 6, 2006 plaintiff reported to work (light duty) but was in too much pain to participate and left early. Plaintiff went to PM medical and x-rays were taken of his left elbow and right foot.

25.     On March 7, 2006 plaintiff was in too much pain to go to work. At approximately 9:00 a.m. two investigators from the Sherriff's Department called him into the hallway. They asked plaintiff exactly what happened on the date of the accident and said they would file a report.

26.     On March 9, 2006 plaintiff could not work and asked for medical attention and did not receive medical care.

27.     On March 10, 2006 plaintiff was called to medical and was told that all the x-rays were ok and not to worry about my dizziness or blurred vision and that he would be sent back to

the clinic for back pain.

28.    On March 11 and March 12, 2006 Plaintiff was unable to work and in intense pain.

29.    On March 13, 2006 plaintiff returned to light duty work but the pain was intense and he had not received any medication since Saturday.

30.    On March 14, 2006 plaintiff reported to work but was in severe pain and I asked Mr. Fuoco to take him to medical.  Mr. Fuoco walked plaintiff to medical and he saw a doctor and was given two pills without being told what they were and again told that his x-rays were normal. Plaintiff asked about going to the back clinic and was told no order had been given and that they would put in the order and it could take weeks.  They refilled plaintiff's pain medication and muscle relaxants and at 9:00 p.m. that night plaintiff was called back for more x-rays.

31.    On March 15, 2006 plaintiff reported to light duty work and was in severe pain. He asked a Correction officer for the sick call sheet and was told to stop sending sheets because he was making too much work for them.  Plaintiff sent a medical request in again on March 18, 2006 with no response and with the same result on March 19, 2006.

32.    On March 20, 2006 plaintiff reported to work and the pain was very bad and was called to medical in the evening.

33.    On March 26, 2006 plaintiff did not work and was in severe pain. Plaintiff was called to medical in the pm and was told there was nothing they could do. They told him that this would have happened at some point to his back because of his age. Plaintiff asked at that point what he could do to get to the back clinic or get an MRI performed.  They told him that they had no idea how long this would take.

34.    Plaintiff requested medical treatment again on March 28, 2006 without response, on March 29th without response, March 30th without response, March 31st without response, April 1st without response, April 2nd with no response.

6

35.     On April 3, 2006 plaintiff  reported to light duty and was taken to medical with the help of  Mr. Fuoco.  He was told by a doctor they would renew his medical prescriptions but that evaluation at the back clinic for an MRI could take up to two more months.

36.     On April 9, 2006 plaintiff requested medical attention and received no response. On April 10, 2006 plaintiff was called to medical and his meds were renewed. On April 13, 2006 plaintiff was called to the hospital and brought over in shackles. The doctor looked at his elbow and told me him it showed arthritis.

37.     From April 16 through April 25, 2006 plaintiff received no medication and the pain was unbearable.

38.     On April 24, 2006 plaintiff's mother passed away and his wife tried to make arrangements to tell him the news but they would not let her. Plaintiff was given a message by a Corrections Officer that his lawyer had an important message for him and to get in touch with him. Plaintiff spent the next two hours trying to reach his lawyer and was unable to do so. Finally plaintiff talked to with my wife late that afternoon and was given the news concerning his mother.

39.     On April 25, 2006 plaintiff did not go to work. On April 26, 2006 plaintiff reported to work.  At about 8:30 a.m. Corrections Officers came to retrieve him at work and told him they were going to take him to hiss mother's wake. Plaintiff was upset because of what other inmates had told him about similar experiences and concerned that he would lose his position in the dorm. When plaintiff got back to the dorm it was clear they had done a search of his area and all his books and papers were gone including the last letter his mother had sent him. At that point, plaintiff asked to see a mental health professional or priest. Three hours after that they sent him to the mental health unit where he  sat in a holding cell for an hour and a half and saw no one.

40.     On May 3, 2006 plaintiff requested medical attention and did not receive any. On May 4, 2006 plaintiff was called to the medical department and was told he was okay that he

needed no more meds. He was told to exercise and to put hot compresses on his back. There was no improvement in his pain and he was not supplied any compresses.

41.     On May 6 though May 16, 2006 plaintiff had no meds and it was very difficult to sleep. His sick call slips were sent and he received no medical treatment. On May 16, 2006 plaintiff was called to medical.  He asked about the cut on his hand was told it was nothing. On May 14 through May 22, 2006 plaintiff was unable to work because of the pain.

42.     On May 22, 2006 plaintiff was called to the hospital to see a neurologist who made the appointment for an MRI. He noticed that plaintiff's right hand was swollen and asked what was the problem. Plaintiff told him there was cut there from his accident and that I had been sent to medical and was told it was nothing. Plaintiff was told to go back to medical right away and that they would make arrangements to prescribe an antibiotic.

43.     On May 24, 2006 plaintiff reported to work. At this point plaintiff's hand was swollen the size of a catcher's mit. Mr. Fuoco noticed plaintiff's hand and saw red lines running up my arm. He asked what medical was doing. Plaintiff told him they had prescribed antibiotics but they were never given to him . Mr. Fuoco walked plaintiff to medical and told them they had to do something. They looked at my plaintiff's hand and told him he would have to go right to the hospital for IV and antibiotics. Plaintiff was taken to the emergency room where he examined and was told he had a very bad infection and was lucky to be there.

44.     On May 26, 2006 plaintiff returned to the jail. On May 27, 2006 plaintiff was unable to work. On June 1, 2006 plaintiff was in severe pain and asked for medical and received no answer.  The same thing occurred on June 16, 2006. On June 17, 2006 plaintiff was called to medical and the prescriptions were renewed.

45.     On July 10, 2006 plaintiff was taken to the hospital in shackles for an MRI of his head. On July 11, 2006 plaintiff was called to the hospital and taken in shackles to see a

neurologist who ordered blood tests. On July 12, 2006 plaintiff was taken to the hospital in shackles for an MRI of the neck. On August 12, 2006 plaintiff was called to medical and was given meds and told they had no information about any back clinic. Plaintiff was still in substantial pain. On September 12, 2006 plaintiff was called to the hospital and taken in shackles for the MRI results and told there was no definitive diagnosis and was told to continue pain medication and muscle relaxants.

46.     Things continued much the same until his release from the Correctional Facility on October 6, 2006.

47.     Upon his release from the Correctional Facility plaintiff was still in pain for the injuries he sustained and his knees were still swollen. Plaintiff had no medical insurance and was later advised his application for no fault benefits was denied and that he was not eligible for Workmen's Compensation since he was not an employee at the time of his injury. Plaintiff has had an extremely difficult time finding physicians that would treat him because he has no insurance and limited means to pay for his medical treatment. Upon his release from the Nassau County Correctional Facility on October 6, 2006 plaintiff contacted the office of Dr. Marc Chernoff, orthopedic surgeon and received the first available appointment on October 18, 2006.

48.     Plaintiff could not schedule regular treatment because of the insurance issue. He remains under the care of Dr. Chernoff and is disabled from employment and requires surgery in the form of epidural steroid injections for his back pain and possible future surgery for his herniation at L4-5.

49.     Plaintiff has also come under the care of Dr. Fred Carter who has recommended knee surgery. He has also been evaluated by Dr. Kelman. The injuries caused by the subject accident have been diagnosed as follows:

PARTIAL TEAR OF THE MEDIAL COLLATERAL LIGAMENT OF LEFT KNEE

9

TEAR OF THE MEDIAL MENISCUS OF LEFT KNEE

PARTIAL TEAR OF THE PROXIMAL COMMON EXTENSOR TENDON ADJACENT TO THE LATERAL EPICONDYLE OF LEFT ELBOW

L3/4 THROUGH L5/S1 POSTERIOR DISC HERNIATIONS AND POSTERIOR OSSEOUS RIDGING WITH VENTRAL THECAL SAC IMPRESSION

3/4 AND L4/5 LEFT FACET HYPERTROPHIC CHANGE AND NARROWING OF THE LEFT GREATER THAN RIGHT FORAMINA

L5/S1 FACET HYPERTROPHIC CHANGE AND NARROWING OF THE RIGHT AND LEFT FORAMINA WITH ABUTMENT OF THE EXITING L5 ROOTS

SYNOVIAL FLUID IN LEFT ELBOW JOINT

LOWER BACK PAIN, NUMBNESS, TINGLING, AND WEAKNESS IN LOWER EXTREMITIES

LEFT ELBOW SPRAIN

BILATERAL KNEE SPRAIN

RIGHT ACHILLES TENDINITIS

LUMBOSACRAL RADICULITIS

50. At the present time plaintiff remains disabled from seeking employment and will not be able to do so until he has surgical repair to his knee, elbow, and finds a surgical method to reduce his back pain.

## AS AND FOR A FIRST CAUSE OF ACTION FOR VIOLATION OF CONSTITUTIONAL RIGHTS

51. That the acts of the defendant, Corrections Officer, Arthur Hagenbruch and other Corrections Officers, whose names are currently unknown were under color of state law as described herein, constituting denial of proper medical care in violation of plaintiff's Civil Rights under the Eighth and Fourteenth Amendments of the Constitution of the United States and under 42 U.S.C. § 1983.

52.     As a result of the foregoing, plaintiff, PETER BRANSFIELD, has suffered serious physical injuries; cruel and unusual punishment; mental distress, and pain and suffering.

53.     That as a direct and proximate result of the acts of the defendant correction officers, the plaintiff, PETER BRANSFIELD, suffered the following injuries and damages:

a)     Violation of his constitutional rights under the Eighth and Fourteenth Amendments of the United States Constitution to be free of cruel and unusual punishment;

b)     Severe pain and suffering;

c)     Suffered pain and discomfort;

d)     Suffered, still suffers and will continue to suffer severe distress of body and mind;

e)     Has been denied medical benefits and medical care since his release from the Nassau County Correctional Facility.

54.     The action of the defendant, Officer Arthur Hagenbruch and other Corrections Officers who are currently unknown violated the following and clearly established and well settled Federal Constitutional Rights of the plaintiff, PETER BRANFIELD:

Cruel and unusual punishment in violation of the Eighth Amendment.

55.     By reason of the foregoing, plaintiff, PETER BRANSFIELD, has been damaged in the sum of SEVEN HUNDRED FIFTY THOUSAND DOLLARS and 00/100 ($ 750,000.00) DOLLARS plus attorneys fees authorized pursuant to Federal statute.

## AS AND FOR A SECOND CAUSE OF ACTION FOR VIOLATION OF
## CONSTITUTIONAL RIGHTS AGAINST THE COUNTY OF NASSAU

56.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "55" inclusive with the same force and effect as herein set forth at length.

57.     That prior to February 22, 2006, the County of Nassau developed and maintained policies and customs exhibiting deliberate indifference to the Constitutional rights of the citizens of the State of New York who were inmates at the Nassau County Correctional Facility which precipitated the violations of plaintiff, Peter Bransfield's constitutional rights.

58.     That it was the policy and/or custom of the County of Nassau to inadequately and improperly investigate claims of injury and acts of negligence and/or misconduct were instead tolerated by the County of Nassau.

59.     It was the policy and/or custom of the COUNTY OF NASSAU to indemnify and defend its officers, including indemnification for awards for punitive damages, without discipline all of which establish the policy and custom of approving such conduct by giving the officers the unmistakable belief that such conduct was tolerated, approved, and accepted.

60.     It was the policy and/or custom of the COUNTY OF NASSAU to inadequately supervise, discipline and train its corrections officers, including the defendant officers, thereby failing to adequately discourage further Constitutional violations on the part of its corrections officers.

12

61.    That the action of the defendant corrections officers resulted from and were taken pursuant to a *de facto* policy of the defendant, COUNTY OF NASSAU to protect acts of misconduct on the part of its corrections officers, to wit, failing to provide prompt and appropriate medical attention following a serious and obvious injuries.

62.    Despite the knowledge of , unconstitutional policies and practices, the supervisors making policy for the employees of the COUNTY OF NASSAU have not as a matter of policy taken steps to terminate said practices, have not disciplined or otherwise properly supervised the individual officers who engaged in said practices, have not effectively trained corrections officers with regard to proper constitutional statutory limits on the exercise of their authority and/or failure to act following injury to inmates and have instead sanctioned the policies and practices described previously through their deliberate indifference to the effect of such policy and practices upon the Constitutional Rights of the plaintiff herein, the residents and visitors to the COUNTY OF NASSAU, and its correctional facility, thereby authorizing and sanctioning such policies and practices.

63.    The defendant, COUNTY OF NASSAU, having sanctioned the causes of the violation of plaintiff's rights is liable to the plaintiff for his injuries pursuant to 42 U.S.C. §1983, Eighth and Fourteenth Amendments to the United States Constitution.

64.    As a result of the acts stated above, plaintiff, PETER BRANSFIELD, has been rendered sick, sore, lame, disfigured and disabled and has sustained a loss of enjoyment of life; has sustained injuries of a permanent nature; has been compelled to undergo additional medical treatment; has been compelled in the past and will be compelled in the future to expend money in an endeavor to alleviate the pain, secure

13

surgeries; suffering and disabilities and deformities; has been deprived of his Eighth Amendment Rights; has been denied due process in the protection of laws; has been subject to cruel and unusual punishment; has been caused mental distress and/or damage and has suffered in the past and will suffer in the future economic loss as a result of the acts alleged herein and makes claims for attorney's fees pursuant to 42 U.S.C. § 1988.

65.     By reason of the foregoing plaintiff, PETER BRANSFIELD has been damaged in a sum not to exceed SEVEN HUNDRED FIFTY THOUSAND 00/100 ($750,000,000.00) DOLLARS plus attorney's fees authorized pursuant to Federal statute.

**WHEREFORE**, plaintiff, PETER BRANFIELD, demands judgment against the defendants as follows:

a)      In the sum of SEVEN HUNDRED FIFTY THOUSAND  and 00/100 ($750,000.00) DOLLARS on the First Cause of Action;

b)      In the sum of SEVEN HUNDRED FIFTY THOUSAND and 00/100 ($750,000.00) DOLLARS on the Second Cause of Action;

c)      Punitive damages in the sum of  TWO HUNDRED FIFTY THOUSAND and 00/100 ($250,000.00) DOLLARS; and

d)      Costs, disbursements and attorneys fees pursuant to 42 U.S.C. §1988.

14

Dated:      Rockville Centre, New York
              May 9, 2008

Yours etc.,

LAW OFFICES OF STEPHEN CIVARDI, P.C.
By: Stephen Civardi (8376)
Attorney for Plaintiff
265 Sunrise Highway, Suite 30
Rockville Centre, New York 11570
(516) 678-9797

15

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PETER BRANSFIELD,

Plaintiff,

-against-

NASSAU COUNTY CORRECTIONS OFFICER
ARTHUR HAGENBRUCH, Individually, and as a
Corrections Officer attached to the Nassau County
Corrections Department, and other Corrections
Officers whose names are currently unknown,
Individually, and as Corrections Officers attached
to the Nassau County Corrections Department
and the COUNTY OF NASSAU

Defendants.

## SUMMONS AND COMPLAINT

*LAW OFFICES OF STEPHEN CIVARDI, P.C.*
*Attorneys for Plaintiff*
*265 SUNRISE HIGHWAY, SUITE 30*
*ROCKVILLE CENTRE, NEW YORK 11570*

*Telephone:  516-678-9797*
*Facsimile:  516-678-2266*